625 LABARRE ROAD, LLC AND JIM HALL

VERSUS

PARISH OF JEFFERSON, AMERICAN
ALTERNATIVE INSURANCE COMPANY,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA, SAFETY NATIONAL
CASUALTY CORPORATION

NO. 21-CA-133

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 801-707, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING

November 03, 2021

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Stephen J. Windhorst

**AFFIRMED**

    **SMC**
    **JGG**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
625 LABARRE ROAD, LLC AND JIM HALL
 Jim S. Hall
 Matthew B. Moreland
 Jennifer L. Crose

COUNSEL FOR DEFENDANT/APPELLEE,
PARISH OF JEFFERSON
 Guice A. Giambrone, III
 Craig R. Watson
 Carolan D. Luning

COUNSEL FOR DEFENDANT/APPELLEE,
ALTERNATIVE INSURANCE CORPORATION
 David F. Bienvenu
 Joshua D. Ecuyer

COUNSEL FOR DEFENDANT/APPELLEE,
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA
 Robert J. David, Jr.

**CHEHARDY, C.J.**

Plaintiffs-appellants, 625 LaBarre Road, LLC and Jim Hall, as a member of 625 LaBarre, seek review of the trial court's rulings granting exceptions of no cause of action filed by defendants-appellees, the Parish of Jefferson and its insurers, National Union Fire Insurance Company of Pittsburgh, Pennsylvania and American Alternative Insurance Corporation.[1] For the reasons that follow, we affirm the trial court's rulings.

*Facts and Procedural History*

Plaintiffs intended to develop a six-story condominium in the Elvis Court Subdivision in Jefferson Parish on five lots. Accordingly, on October 17, 2017, plaintiffs sought to have the five lots re-designated as one lot, and re-zoned from Zone R-1A, single family residential and C-1, neighborhood commercial district, to R-3, multiple family residential district. Plaintiffs met with members of the Jefferson Parish Planning Department and also notified everyone within 300 feet of the proposed change.

The Parish advertised the proposed changes and held a Public Hearing on December 21, 2017. The Planning and Advisory Board voted unanimously to approve the subdivision modification and re-zoning change, and on January 10, 2018, the Parish Council unanimously approved the ordinances codifying those changes.

Plaintiffs then began working on the property. Plaintiffs allege that they spent more than $250,000 to hire contractors who performed asbestos testing and removal, soil testing, tree removal, demolition and removal of the existing structure, and surveying to address drain line issues. Eleven months later, however,

---

[1] American Alternative Insurance Corporation was incorrectly named American Alternative Insurance Company in plaintiffs' petition. Safety National Casualty Corporation was also named as a defendant in this matter but was voluntarily dismissed without prejudice on January 28, 2020.

plaintiffs allege that they learned from a Parish Council member that the Parish ordinances passed in January 2018, approving the property re-designation and zoning changes, "will be reconsidered and revoked at the next Parish Council meeting, currently scheduled for January 16, 2019." Plaintiffs' Petition alleges that "the exact cause for this reconsideration is disputed but appears to be a result of residents in the area now, at this late date, expressing concerns about the height of the development." According to allegations in the Petition, the Parish Planning Department disseminated incorrect information regarding the development's height when the Parish advertised the proposal before the January 2018 Council meeting at which the ordinances were approved.

Plaintiffs allege that once the Council passed the ordinances in January 2018, plaintiffs acquired constitutionally protected vested property rights, and any repeal of the ordinances would constitute a taking in violation of Louisiana constitutional law. But before the January 16, 2019 Council meeting to consider revoking the already passed ordinances, plaintiffs negotiated a settlement with the objecting neighbors and the Council, agreeing to a reduced and revised project that, according to plaintiffs, also reduced their earning potential. Plaintiffs further allege that they were forced to spend an additional $350,000 to redesign the project as a result of the settlement.

Plaintiffs filed suit against the Parish and its insurers, initially asserting two causes of action.[2] First, plaintiffs alleged that the Parish Council violated

_____

[2] The relevant factual portions of the original Petition provide as follows (emphasis added):

16.

Petitioner believes and alleges that the opposition is as a result of partial misinformation negligently disseminated by and through an internal staff report of the Planning Department, Parish of Jefferson, wherein the report describes the development as a three-story, fifteen unit condominium building, with parking on the first floor, as opposed to a six-story building, which has been proposed from the beginning. …

18.

**Should the Jefferson Parish Council proceed to revoke the re-zoning, petitioners will suffer irreparable harm, injury, loss and damage** as a result of

unspecified State Constitutional provisions and laws by threatening to repeal the ordinances that had already changed the subdivision and zoning designations for the property in question. The second cause of action alleged violations of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401 *et seq.* ("LUTPA").

The Parish and National Union separately filed dilatory exceptions of vagueness and peremptory exceptions of no cause of action. The trial court sustained defendants' exceptions of vagueness and no cause of action and granted plaintiffs 30 days' leave to amend their Petition.

Plaintiffs filed a First Supplemental and Amended Petition, which adopted and reasserted all factual allegations contained in the original Petition, restated their causes of action for violations of LA. CONST. Art. I, §§ 2 and 4, and LUTPA,

---

the action to revoke the subject ordinances. Petitioners have incurred significant expenses due to their reliance upon the legal actions of the Planning and Advisory Board and the Jefferson Parish Council in their subdivision and re-zoning ordinances passes in January of 2018.

19.

The counsel's [sic] Internal Planning Report and Recommendation, which was not prepared by petitioners, was partially incorrect as to how many stories [it] would have, and the planning department itself is to blame for the incorrect and misleading information given to residence [sic] who contacted the planning department. Even though the Internal Planning Report stated the project as a three story building, it correctly listed the maximum at sixty (60) feet. …

21.

Once these ordinances were properly voted and passed by Jefferson Parish Council, petitioners acquired constitutionally protected vested property rights in [these] ordinances [and] **any repeal of the ordinances would have amounted to an illegal taking of petitioners' vested property rights** and violation of Louisiana constitutional laws and protection.

22.

The acts of the Jefferson Parish Council in **threatening to revoke [or] change the ordinances in question** were acts that were arbitrary and capricious and based on no legal cause.

23.

**Because of the threat of repeal** of the acts and in order to mitigate petitioners['] losses, **petitioners entered into a compromise agreement with the objecting property owners and the Jefferson Parish Council agreeing to a reduced revised project** and thus greatly reducing petitioners' earning potential in the project as was originally approved.

24.

**As a result of the compromise**, petitioners were forced to spend additional sums in the amount of $350,000 in redesigning the project in question [and] such sums were incurred as a direct result of the arbitrary and capricious threat of the council to revoke the ordinances in question.

---

and added a claim for detrimental reliance. The detrimental reliance cause of action alleged that plaintiffs relied to their detriment upon the Parish's actions of passing the re-zoning ordinances because plaintiffs incurred expenses to prepare for the development of the project; that the Parish knew or should have known that its action would induce plaintiffs to rely on those ordinances to their detriment; and that the Parish's threatened revocation of the ordinances resulted in a change of position and significant losses. Plaintiffs also alleged that their constitutional rights were violated because they were "deprived and denied property rights without due process in that the Jefferson Parish Council indicated their intent to unequivocally revoke" the ordinances; they "were denied the right to use and enjoy their private property without being subject to unreasonable statutory restrictions and unreasonable exercise of police power"; and the "threat of revocation of the ordinance" was an "unreasonable exercise of police power[.]" Finally, plaintiffs alleged that the "described acts" were "egregious actions which involved misrepresentation, fraud, deception and other unethical conduct on the part of the Parish," in violation of LUTPA.

The Parish and National Union again filed exceptions of no cause of action. At an October 26, 2020 hearing, the trial court sustained the exceptions and dismissed plaintiffs' claims against the Parish and National Union. American Alternative Insurance Corporation filed its own exception of no cause of action on November 2, 2020, which was submitted on briefs. The trial court granted American Alternative's exception in a January 19, 2021 Judgment. Plaintiffs appeal the trial court's rulings on the exceptions of no cause of action, which dismissed all of Plaintiffs' claims against the Parish and its insurers.

*Analysis*

The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy

on the facts alleged in the petition. *Gaudet v. Jefferson Parish*, 12-707 (La. App. 5 Cir. 3/27/13), 116 So.3d 691, 693. No evidence may be introduced to support or controvert an exception of no cause of action. *Id.* (citing La. C.C.P. art. 931). Consequently, the court reviews the petition and accepts well-pleaded allegations of fact as true. *Ramey v. DeCaire*, 03-1299 (La. 3/19/04), 869 So.2d 114, 118. "A petition must set forth the material facts upon which a cause of action is based; the allegation must be ultimate facts; conclusions of law or fact and evidentiary facts will not be considered." *Saxena v. Saxena*, 518 So.2d 1098, 1100 (La. App 5th Cir. 1987). Mere conclusions, unsupported by the facts, do not set forth a cause of action. *Kitziger v. Mire*, 19-87 (La. App. 5 Cir. 9/24/19), 280 So.3d 302, 306, *writ denied*, 19-1858 (La. 1/28/20), 291 So.3d 1055.

When reviewing a trial court ruling that sustained an exception of no cause of action, courts of appeal conduct a *de novo* review, because the exception raises a question of law, and the trial court's decision is based only on the sufficiency of the petition. *Cleco Corp. v. Johnson*, 01-175 (La. 9/18/01), 795 So.2d 302, 304.

*Allegations of Detrimental Reliance*

A detrimental reliance theory of recovery emanates from La. Civ. Code art. 1967, which provides:

> Cause is the reason why a party obligates himself.
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

Three elements are necessary to establish a claim for detrimental reliance: (1) representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. *Suire v. Lafayette City-Par.*

*Consol. Gov't*, 04-1459 (La. 4/12/05), 907 So.2d 37, 59; *Luther v. IOM Co., LLC*, 13-353 (La. 10/15/13), 130 So.3d 17, 25. Claims of detrimental reliance must be examined strictly and carefully. *Kitziger*, 280 So.3d at 308.

In the Petition and First Supplemental and Amended Petition, plaintiffs allege that after the Parish Council approved the re-designation and re-zoning ordinances in January 2018, plaintiffs incurred "over $250,000" in expenses to prepare the property by engaging architects and civil, mechanical, and electrical engineers. For example, plaintiffs hired a surveyor to address drain line issues and hired other professionals to perform asbestos testing and removal, soil testing, tree removal, and demolition and removal of the existing structure on the property.[3]

The Petition then alleges that the "threat of repeal of the acts" caused plaintiffs to enter into a compromise agreement "with the objecting property owners and the Jefferson Parish Council" resulting in a "reduced revised project" that "greatly reduced petitioners' earning potential in the project as originally approved." According to plaintiffs, "[a]s a result of the compromise," they were

---

[3] Specifically, plaintiffs' Petition alleges at paragraph 12 that they undertook the following work:

    a.  Performed asbestos testing;
    b.  Recorded site plan with Jefferson Parish Clerk of Court;
    c.  Capped off severe [sic] pipes as per demolition permit requirements;
    d.  Had site plan and report done on all trees as per the demolition permit requirements.
    e.  Hired individuals to remove trees off power lines;
    f.  Filed for and received tree removal permit from Jefferson Parish;
    g.  Applied for and received a demolition permit from Jefferson Parish;
    h.  Did the required DEQ testing for removal of asbestos and removed the asbestos;
    i.  Demolished the three-story wooded structure and mason brick house on the lot and removed truckloads of demolished materials;
    j.  Put fill and leveled the lots to grade;
    k.  Removed trees from the property line;
    l.  Hired surveyors to workout drain line issues with Jefferson Parish;
    m.  Repaired a fence in the back and side of the property;
    n.  Removed the trees on the back, right side of the property including stumps and filling stump holes with sand;
    o.  Performed required soil testing;
    p.  And other actions and expenses.

"forced to spend additional sums in the amount of $350,000 in redesigning the project in question[.]"

A careful review of the Petition shows that the listed activities occurring before the Parish's "threat to revoke the ordinance[s]" are activities that would have been necessary for nearly any construction project, including the project as later modified. The Petition and First Supplemental and Amending Petition establish that the project proceeded, albeit with modifications to which plaintiffs ultimately agreed. Plaintiffs never allege that the listed activities were specific to the original plans, or that any of those activities would *not* have been performed if plaintiffs had known the project would be reduced in scope. Consequently, the third prong of detrimental reliance – a change in position to one's detriment because of the reliance – has not been pled with respect to the $250,000 of expenses plaintiffs allegedly incurred before learning of the potential revocation of the ordinances.

In addition, plaintiffs clearly allege that they settled with the Parish and agreed to modify the scope of the project.[4] The additional $350,000 that plaintiffs claim to have spent as a result of the alleged "threatened action" of the Council were incurred *after entering into a compromise agreement* with the Council, according to the Petition. Further, plaintiffs do not allege that the compromise agreement reserved plaintiffs' right to pursue damages against the Council through litigation. Plaintiffs' allegations fail to state a detrimental-reliance cause of action against the Parish.

*Allegations of Constitution Violations through State Action*

Plaintiffs allege at paragraph 21 of their Petition that "[o]nce these ordinances were properly voted and passed by Jefferson Parish Council, petitioners

---

[4] A copy of the compromise agreement was not attached to the Petition or First Supplemental and Amending Petition and is not included elsewhere in the record.

acquired constitutionally protected vested property rights in [these] ordinances [and] any repeal of the ordinances would have amounted to an illegal taking of petitioners' vested property rights and violation of Louisiana constitutional laws and protection." The First Supplemental and Amending Petition alleges that plaintiffs' rights "pursuant to Article 1, Section 4 of the Louisiana Constitution were violated in that petitioners were denied the right to use and enjoy their private property without being subject to unreasonable statutory restrictions and unreasonable exercise of police power."[5] In their briefing, plaintiffs argue that the Parish's "intent to unequivocally revoke the previously passed" ordinances constitutes an action of the State in violation of their rights.

In *State, Through Dep't of Transp. and Dev. v. Chambers Inv. Co., Inc.*, 595 So.2d 598, 603 (La. 1992), the Louisiana Supreme Court set forth a three-pronged test for determining whether a constitutional taking has occurred: (1) whether a person's legal right with respect to a thing or object has been affected; (2) whether the property, either a right or a thing, has been taken or damaged in a constitutional sense; and (3) whether the taking or damaging was for a public purpose.

Here, plaintiffs obtained from the Parish the remedy they sought—the property was re-designated and re-zoned with the passage of the applicable ordinances in January 2018. The Petition and First Supplemental and Amending Petition consistently allege only a "threat" of repeal that "would have amounted" to an illegal taking; the facts stated in the Petition and First Supplemental and Amending Petition do not specifically allege that an illegal taking has occurred. The project proceeded, though plaintiffs agreed to a change in size or scope through a compromise with the Council and complaining residents. Mere

_____

[5] LA. CONST. Art. 1, § 4 (A) provides: "Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of police power." LA. CONST. Art. 1, § 2 provides: "No person shall be deprived of life, liberty, or property, except by due process of law."

allegations of a "threat" of taking, followed by allegations that plaintiffs willingly compromised their plans, are insufficient to establish a constitutional violation. Because plaintiffs have not specifically alleged that their property was taken or damaged in any constitutional sense, plaintiffs have failed to state a cause of action on this basis.

*Allegations under the Louisiana Unfair Trade Practices Act*

The Louisiana Unfair Trade Practices Act ("LUTPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" La. R.S. 51:1405(A). The purpose of LUTPA is to protect consumers and to foster competition by halting unfair business practices and sanctioning the businesses which commit them, preserving and promoting effective and fair competition, and curbing business practices that lead to a monopoly and unfair restraint of trade within a certain industry." *Monroe v. McDaniel*, 16-214 (La. App. 5 Cir. 12/7/16), 207 So.3d 1172, 1179.

There is no indication the Parish was engaged in the conduct of trade or commerce when it allegedly "threatened" to revoke the ordinances, nor is there any allegation that the Parish was restraining trade, promoting monopolistic conduct, or otherwise conducting unfair business practices. But even if the Parish were somehow involved in trade or commerce, plaintiffs' LUTPA claim fails on the face of the Petition and First Supplemental and Amended Petition.

To succeed on a LUTPA claim, a plaintiff must prove "some element of fraud, misrepresentation, deception, or other unethical conduct" on the part of the defendant. *Dufau v. Creole Engineering, Inc.*, 465 So.2d 752, 758 (La. App. 5 Cir.), *writ denied*, 468 So.2d 1207 (La. 1985). The range of practices prohibited by LUTPA is "extremely narrow." *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 09-1633 (La. 4/23/10), 35 So.3d 1053, 1060. Allegations of "mere negligence" are insufficient to state a claim under LUTPA. *Quality Envir.*

*Processes, Inc. v. I.P. Petroleum Co., Inc.*, 13-1582 (La. 5/7/14), 144 So.3d 1011, 1025.

Plaintiffs contend at paragraph 19 of the Petition that the Parish is liable because "the planning department itself is to blame for the incorrect and misleading information given to residence [sic] who contacted the planning department." At best, this statement alleges negligence, not "egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct[.]" *Cheramie Services*, 35 So.3d at 1060. Although the language of the First Supplemental and Amended Petition tracks *Cheramie* when it states that "the described acts amount to egregious actions which involved misrepresentation, fraud, deception and other unethical conduct," plaintiffs fail to enunciate any additional facts to support this conclusory statement, and thus have failed to state a LUTPA claim against the Parish as a matter of law.

## DECREE

The trial court properly granted defendants' exceptions of no cause of action to dismiss plaintiffs' claims against the Parish of Jefferson, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and American Alternative Insurance Corporation. Accordingly, the trial court's rulings are affirmed.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**NOVEMBER 3, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-133

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
JIM S. HALL (APPELLANT)          CAROLAN D. LUNING (APPELLEE)          CRAIG R. WATSON (APPELLEE)
GUICE A. GIAMBRONE, III (APPELLEE)    JOSHUA D. ECUYER (APPELLEE)

### MAILED
DAVID F. BIENVENU (APPELLEE)     ROBERT J. DAVID, JR. (APPELLEE)     JENNIFER L. CROSE (APPELLANT)
ATTORNEY AT LAW                  ATTORNEY AT LAW                     MATTHEW B. MORELAND (APPELLANT)
1100 POYDRAS STREET              700 SAINT JOHN STREET               ATTORNEYS AT LAW
30TH FLOOR                       SUITE 501                           800 NORTH CAUSEWAY BOULEVARD
NEW ORLEANS, LA 70163            LAFAYETTE, LA 70501                  SUITE 100
                                                                     METAIRIE, LA 70001