EDITH TERRY, ET AL

VERSUS

NOTRE DAME HEALTH SYSTEM D/B/A
WYNHOVEN HEALTH CARE CENTER, ET
AL

NO. 23-CA-68

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 823-313, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING

October 31, 2023

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and John J. Molaison, Jr.

**AFFIRMED**
    **JGG**
    **RAC**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
EDITH TERRY
     Louis A. Gerdes, Jr.

COUNSEL FOR DEFENDANT/APPELLEE,
NOTRE DAME HEALTH SYSTEM D/B/A WYNHOVEN HEALTH CARE
CENTER, WYNHOVEN HEALTH CARE CENTER, NOTRE DAME HEALTH
SYSTEM AND CHATEAU DE NOTRE DAME
     Lorraine P. McInnis

**GRAVOIS, J.**

Plaintiff, Edith Terry, appeals the trial court's October 12, 2022 judgment which sustained defendants' exception of no cause of action and dismissed plaintiffs' claims against defendants with prejudice. For the reasons that follow, we affirm.

<u>FACTS AND PROCEDURAL HISTORY</u>

In June of 2020, Rosie Tardieff, then 90 years old, was admitted to Wynhoven Health Care Center located at 1050 Medical Center Boulevard in Marrero, Louisiana, for rehabilitation after being hospitalized for falling in her home. Ms. Tardieff had a history of hip fractures and suffered from Alzheimer's disease and dementia. While at Wynhoven, Ms. Tardieff had limited mobility and used a wheelchair. On June 14, 2020, Ms. Tardieff fell allegedly while unattended as she moved from her wheelchair to her bed. She was transferred to West Jefferson Medical Center. As a result of the fall, Ms. Tardieff suffered a fractured collar bone, a severe cut to her head, and a broken nose. After treatment at West Jefferson Medical Center, she returned to Wynhoven. At a later date, Ms. Tardieff died.

On December 2, 2021, plaintiff, Edith Terry, filed a petition for damages on behalf of Ms. Tardieff, her deceased mother.[1] Plaintiff named as defendants, Notre Dame Health System d/b/a Wynhoven Health Care Center, Wynhoven Health Care Center, Notre Dame Health System, and Chateau de Notre Dame. Plaintiff alleged that Ms. Tardieff fell at Wynhoven after being left unattended. She claimed that the injuries Ms. Tardieff suffered as a result of her fall and her eventual death were caused by defendants' "gross and wanton negligence" in the following respects:

---

[1] In her petition, plaintiff stated that she filed the petition as "the designated heir to the survival action pursuant to La. CCP Art. 2315.1." She further stated that she did file this matter with the Patient's Compensation Fund, and that all parties waived their right to a Medical Review Panel by not naming an attorney-chairman within one year from the date of filing.

A. Failure to consider the safety of its patients;

B. Failure to provide adequate medical treatment to Ms. Tardieff;

C. Failure to dispense the proper treatment to petitioner;

D. Negligent for not properly supervising petitioner;

E. Negligent for allowing an inexperienced and unskilled individual to tend to Ms. Tardieff; and

F. All other acts of negligence which may be proven at or prior to the trial of this matter.

In their Answer and Affirmative Defenses, defendants pled the affirmative defense of immunity, pursuant to the Louisiana Health Emergency Powers Act, La. R.S. 29:770, *et seq.* Defendants asserted that at the time of Ms. Tardieff's fall, a public health emergency was declared due to the SARS-CoV-2 ("COVID") virus global pandemic. Under the provisions of La. R.S. 29:771(B)(2)(c)(i), during a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property "except in the event of gross negligence or willful misconduct." Defendants denied that Ms. Tardieff suffered any injury as a result of gross negligence or willful misconduct on their part.

Subsequently, on August 19, 2022, defendants filed a Peremptory Exception of No Cause of Action, arguing that the conclusory allegations contained in plaintiff's petition are not sufficient to establish a cause of action for gross negligence and willful misconduct. Defendants argued that they are considered a "health care provider" under the Louisiana Health Emergency Powers Act.[2] On March 11, 2020, Governor John Bel Edwards declared a public health emergency in Proclamation No. 25 JBE 2020 due to COVID. The public health emergency

---

[2] Louisiana Revised Statute 29:762(4) of the Louisiana Health Emergency Powers Act defines "health care provider" as a clinic, person, corporation, facility, or institution which provides health care or professional services by a physician, dentist, registered or licensed practical nurse, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, psychologist, or psychiatrist, and any officer, employee, or agent thereof acting in the course and scope of his service or employment.

remained in place until March 2022. During this time, Ms. Tardieff's alleged injuries occurred. Defendants argued that they are provided immunity under La. R.S. 29:771(B)(2)(c)(i) and the Louisiana Health Emergency Powers Act during a state of public health emergency, except in the event of gross negligence or willful misconduct. Because plaintiff's allegations in her petition do not rise to the level of gross negligence or willful misconduct, defendants argued that they cannot be held civilly liable and are immune from the claim for damages.

In response, plaintiff filed an opposition to the Peremptory Exception of No Cause of Action and an Amended Petition. In her Amended Petition, plaintiff asserted that defendants were aware of Ms. Tardieff's extensive medical history upon her arrival at Wynhoven. Plaintiff included excerpts from Ms. Tardieff's medical records which stated that Ms. Tardieff had a history of frequent falls, COVID, strokes, hip fractures, chronic lower back pain, Alzheimer's disease, dementia, anemia, hypothyroidism, osteoarthritis, coronary artery disease, diabetes, high blood pressure, Vitamin B-12 deficiency, and increased hallucinations and delusions.[3] Upon Ms. Tardieff's arrival at Wynhoven, she was weak and required two or more assistants to shower or use the toilet. In an "initial assessment" by Occupational Therapy, it was noted that in terms of self-care, a dependent-helper did "all of the effort." Her mobility was by wheelchair, and on June 8, 2020, she could only stand for 15 seconds. Without therapy, she was at risk for further functional decline and falls. She could not follow simple instructions, had little interest or pleasure in doing things, was low energy, and short tempered.

Plaintiff claimed in the Amended Petition that defendants ignored these conditions and left her alone in her room in her wheelchair. Plaintiff claimed that defendants' attempt to keep Ms. Tardieff safe by putting a call bell on her wheel

---

[3] Plaintiff also attached Ms. Tardieff's medical records to the Amended Petition as exhibits.

chair was insufficient given her conditions, and defendants should have taken more stringent measures to ensure her safety. Plaintiff claimed that defendants did "very little" to ensure Ms. Tardieff would not fall again, and their conduct amounted to gross negligence as it shows a continuous pattern of lack of care.

Following a hearing on defendants' exception of no cause of action on October 12, 2022, a written judgment was signed that same day sustaining defendants' exception of no cause of action and dismissing plaintiff's claims against defendants with prejudice. This timely appeal followed.

On appeal, plaintiff argues that the petition, amended petition, and supporting exhibits present a cause of action for gross negligence. She asserts that the facts alleged show repeated and consistent neglect by defendants in light of Ms. Tardieff's extensive physical and mental impairments, and accordingly such allegations are sufficient to state a valid cause of action against defendants for gross negligence.

## LAW AND ANALYSIS

The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. *Gaudet v. Jefferson Parish*, 12-707 (La. App. 5 Cir. 3/27/13), 116 So.3d 691, 693. The exception is triable on the face of the petition and any attached documents, and for purposes of resolving the issues raised by the exception, the well-pled facts in the petition must be accepted as true. *I E C I, LLC v. S. Cent. Planning & Dev. Comm'n, Inc.*, 21-382 (La. App. 5 Cir. 2/23/22), 336 So.3d 601, 611. No evidence may be introduced to support or controvert an exception of no cause of action. La. C.C.P. art. 931.

The mover has the burden of demonstrating the petition states no cause of action. The pertinent question is whether, in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's behalf, the petition states a

valid cause of action for relief. *Pinegrove Elec. Supply Co., Inc. v. Cat Key Const., Inc.*, 11-660 (La. App. 5 Cir. 2/28/12), 88 So.3d 1097, 1100. Whether the plaintiff can prove the allegations set forth in the petition is not determinative of the exception of no cause of action. *New Orleans Craft Temple, Inc. v. Grand Lodge of Free & Accepted Masons of the State of Louisiana*, 13-525 (La. App. 5 Cir. 12/19/13), 131 So.3d 957, 962.

In reviewing the judgment of the trial court relating to an exception of no cause of action, appellate courts should conduct a *de novo* review because the exception raises a question of law and the lower court's decision is necessarily based solely on the sufficiency of the petition. *Kitziger v. Mire*, 19-87 (La. App. 5 Cir. 9/24/19), 280 So.3d 302, 306, *writ denied*, 19-1858 (La. 1/28/20), 291 So.3d 1055.

It is undisputed that at the time of Ms. Tardieff's fall, a public health emergency was declared due to COVID and that defendants are healthcare providers. As stated *supra*, as part of the Louisiana Health Emergency Powers Act, La. R.S. 29:771(B)(2)(c)(i) provides that "During a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property *except in the event of gross negligence or willful misconduct.*" (Emphasis added.) The tort immunity provided by La. R.S. 29:771(B)(2)(c)(i) is an affirmative defense that must be properly pled pursuant to Louisiana Code of Civil Procedure article 1005. *Welch v. United Medical Healthwest-New Orleans*, L.L.C., 21-0684 (La. App. 5 Cir. 8/24/22), 348 So.3d 216, 221-22. An affirmative defense raises a new matter that, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff's demand on its merits. *Id.* at 221.

Louisiana jurisprudence has held that an affirmative defense may not form the basis of a peremptory exception when the asserted defense goes to the merits of

the case.  *See Jackson v. Jefferson Par. Sch. Bd.*, 21-260 (La. App. 5 Cir. 2/2/22), 336 So.3d 561, 565-66; W*hite v. New Orleans Center for Creative Arts*, 19-213 (La. App. 4 Cir. 9/25/19), 281 So.3d 813, 822, *writ denied*, 19-1725 (La. 12/20/19), 286 So.3d 428; *Mouton v. Hebert's Superette, Inc.*, 10-787 (La. App. 3 Cir. 12/8/10), 53 So.3d 561, 564.  When an exception of no cause of action is based on an affirmative defense, the exception should not be sustained unless the allegations of the petition exclude every reasonable hypothesis other than the premise on which the defense is based.  *Adams v. Owens-Corning Fiberglas Corp.*, 04-1296 (La. App. 1 Cir. 9/23/05), 921 So.2d 972, 976, *writ denied*, 05-2501 (La. 4/17/06), 926 So.2d 514.

In *Welch*, this Court found that the defendants met their burden and proved that the alleged negligence that occurred during a state of public health emergency did not rise to the level of gross negligence, triggering immunity.  This Court affirmed the sustaining of an exception of no cause of action filed by the defendants.  *Id.*, 348 So.3d at 221-22.

Plaintiff asserts that the facts set forth in her petition are sufficient to state a cause of action under gross negligence.  In *Ambrose v. New Orleans Police Dep't Ambulance Serv.*, 93-3099 (La. 7/5/94), 639 So. 2d 216, 219-220, the Supreme Court provided the following definitions of "gross negligence":

> Gross negligence has been defined as the "want of even slight care and diligence" and the "want of that diligence which even careless men are accustomed to exercise." *State v. Vinzant*, 200 La. 301, 7 So.2d 917 (La. 1942).  Gross negligence has also been termed the "entire absence of care" and the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others." *Hendry Corp. v. Aircraft Rescue Vessels*, 113 F.Supp. 198 (E.D.La. 1953) (applying Louisiana law).  Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." W. Page Keeton, et. al., Prosser & Keeton on the Law of Torts, § 34, at 211 (5th ed. 1984); 65 C.J.S. Negligence, § 8(4)(a), at 539-40 (1966 & Supp. 1993).  "There is often no clear distinction between such [willful, wanton, or reckless] conduct and 'gross' negligence, and the two have tended to merge and take on the same meaning." *Falkowski v. Maurus*, 637 So.2d 522 (La. App. 1st

Cir.), *writ denied*, 629 So.2d 1176 (La. 1993) (quoting Prosser & Keeton, supra, at 214)). Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence.

Upon *de novo* review, accepting the facts alleged in the petitions as true, we find that plaintiff's petitions fail to state a cause of action for gross negligence or willful misconduct. Though plaintiff does allege in her Amended Petition that Ms. Tardieff suffered from a number of physical and cognitive impairments, we find that the facts alleged in plaintiff's petitions fail to rise to the level of gross negligence or willful misconduct by defendants relative to Ms. Tardieff's fall. Plaintiff's conclusory statement that defendants did "very little" to ensure that Ms. Tardieff was safe and would not sustain another fall is insufficient to state a valid cause of action against defendants for gross negligence or willful misconduct. Accordingly, we find that the trial court did not err in sustaining defendants' exception of no cause of action.

## DECREE

For the foregoing reasons, we affirm the trial court's judgment which granted defendants' exception of no cause of action and dismissed plaintiff's claims against defendants with prejudice.

## AFFIRMED

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 31, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-CA-68

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
LOUIS A. GERDES, JR. (APPELLANT)          L. DAVID ADAMS (APPELLEE)          LORRAINE P. MCINNIS (APPELLEE)

**MAILED**